UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Carolina Acoustical and | ) | Case No. 05-13236C-7G |
| Flooring, Inc., f/d/b/a | ) | |
| The Tile Shop, | ) | |
| | ) | |
| Debtor. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |
| | ) | |
| Charles M. Ivey, III, Trustee | ) | |
| for Carolina Acoustical and | ) | |
| Flooring, Inc., f/d/b/a | ) | |
| The Tile Shop, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 07-2032 |
| | ) | |
| Hunter Acquisitions, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OPINION

This adversary proceeding came before the court on May 13, 2008, for hearing on the defendant's motion for summary judgment. John M. Blust appeared on behalf of the plaintiff and Emily J. Meister and Amiel J. Rossabi appeared on behalf of the defendant. For the reasons that follow, the court has concluded that the motion should be granted in part and denied in part.

JURISDICTION

The court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984.

The matter before the court is a core matter within the meaning of 28 U.S.C. § 157(b) which this court may hear and determine.

FACTS

This proceeding involves a suit by the plaintiff as chapter 7 trustee for Carolina Acoustical & Flooring, Inc. ("debtor") to recover amounts allegedly due on three obligations arising out of the defendant's purchase of the assets of the debtor in July of 2004. The complaint prays for a recovery of $110,000 consisting of a $30,000 obligation evidenced by a promissory note, a $50,000 obligation evidenced by a second promissory note and a third obligation in the amount of $30,000 alleged to be a "working capital loan" that the debtor extended to the defendant.

The defendant admits the issuance of the two promissory notes, but denies any liability on the notes on the grounds that defendant is entitled to a complete setoff based upon indemnity provisions contained in the purchase agreement between the debtor and the defendant. The defendant also denies liability as to the alleged working capital loan, asserting no such loan was ever extended by the debtor.

Defendant's indemnification claim is based upon the failure of the debtor to pay a business broker involved in the sale of the debtor's assets to the defendant. According to the motion, the debtor was responsible for paying the broker and when the debtor failed to do so, the broker filed a suit against both the debtor

and the defendant which ultimately was settled by the defendant paying the broker $50,000.  In addition to the $50,000 payment, the defendant asserts that attorney fees were incurred by the defendant as a result of the broker's suit.  The defendant contends that the purchase agreement obligated the debtor to indemnify the defendant as to both the settlement payment and the attorney fees and that under section 553 of the Bankruptcy Code, defendant is entitled to setoff the amount due under the two promissory notes against the debtor's obligation to indemnify the defendant.

ANALYSIS

I.   Standard for Granting Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure which is incorporated into Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir. 1987)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).  The existence of a factual dispute is material and precludes summary judgment only if the disputed fact is

- 3 -

determinative of the outcome under applicable law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In order to carry this burden, the movant must show through affidavits, depositions or admissions all facts required to support each element of the claim or defense and that none of those facts are disputed. See Moore's Federal Practice, § 56.13 (3rd ed. 2007). In determining whether the evidence is sufficient to establish the claim, the evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. See In re Trauger, 101 B.R. 378, 381 (Bankr. S.D. Fla. 1989); In re Graham, 94 B.R. 386, 388 (Bankr. E.D. Pa. 1988). If the moving party makes the required showing, then the opposing party must set forth the specific facts showing there is a genuine issue for trial. See In re Trauger, 101 B.R. at 380.

II. Discussion and Application of Substantive Law

A. Claim Based on Working Capital Loan

The defendant is entitled to summary judgment as to the portion of plaintiff's claim based upon the alleged $30,000 working capital loan. Defendant's affidavit and exhibits reflect unequivocally that no such loan was ever funded by the debtor and plaintiff has not disputed defendant's evidence. Accordingly,

- 4 -

defendant's motion for summary judgment shall be granted as to the portion of the claim based upon the alleged working capital loan.

B. Claim Based on Promissory Notes

Whether the defendant is entitled to summary judgment as to its liability under the two promissory notes depends upon whether the undisputed facts are sufficient to establish that defendant is entitled to invoke setoff in bar of the plaintiff's claim under the promissory notes. Although section 553 of the Bankruptcy Code does not itself create a right of setoff, it does preserve any right of setoff that exists under applicable nonbankruptcy law. Durham v. SMI Indus. Corp., 882 F.2d 881, 883 (4th Cir. 1989); 5 Collier on Bankruptcy ¶ 553.01[2] (15th ed. rev. 2008)("[T]he section merely recognizes and preserves setoff rights that exist under other applicable law, and then only to the extent that the conditions of section 553 have been satisfied.").

If a right of setoff exists under applicable state law, then section 553 preserves the "right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case. . . ." 11 U.S.C. § 553. Thus, in order to exercise a right of setoff under section 553, there are four conditions that must exist: (1) the creditor must hold a "claim" against the debtor that arose before the commencement of the case; (2) the creditor

- 5 -

must owe a "debt" to the debtor that also arose before the
commencement of the case; (3) the claim and debt must be "mutual";
and (4) the claim and debt each must be valid and enforceable.
5 <u>Collier on Bankruptcy</u> ¶ 553.01[1] (15th ed. rev. 2008).  These
are the section 553 requirements that must be satisfied in order
for the defendant to prevail on its motion for summary judgment
and, as the party asserting setoff, the defendant has the burden of
proving each of the requirements by a preponderance of the
evidence.  <u>In re Krause</u>, 261 B.R. 218, 222 (8th Cir. BAP 2001); <u>In
re Camellia Food Stores, Inc.</u>, 287 B.R. 52, 59 (Bankr. E.D. Va.
2002)(citing numerous cases).

     1.   Is setoff available under applicable
          nonbankruptcy law?

Where, as in the present proceeding, a party relies upon state
law as the basis for setoff, "the general rule is that the
existence of the right, as well as the nature and essential
validity of the obligations sought to be offset, will be determined
in accordance with the law of the place where the operative facts
transpired."  5 <u>Collier on Bankruptcy</u> ¶ 553.04, p. 553-61.  This
means that North Carolina law is applicable in this proceeding
since all of the operative facts transpired in North Carolina.

As noted in the <u>Durham</u> case, North Carolina has long
recognized the right of setoff where mutual debts exist between
parties.  882 F.2d at 883.  The requirements for setoff under North
Carolina law are mutuality of parties and of claims.  <u>In re Battery</u>

- 6 -

King Mfg. Co., Inc., 83 S.E.2d 490, 492 (N.C. 1954)(setoff available where there is "mutuality of parties and of demands"); In re Bank of Sampson, 171 S.E. 436, 436 (N.C. 1933)(setoff available where "both claims exist between the same parties and in the same right"). Under North Carolina law, setoff is available when "each party owns his own claim in his own right severally with the right to collect it in his own right and severally." In re Britton, 83 B.R. 914, 918 (Bankr. E.D.N.C. 1988)(summarizing North Carolina law). The reference in the North Carolina cases to owning the claim "severally" distinguishes a debt solely owned by a party from a debt owned jointly with another party and ordinarily would preclude a setoff if one claim was owned jointly and the opposing claim was owned severally. Id. In the present case, "each party owns his own claim in his own right severally with the right to collect it in his own right and severally" which means that they are the type of claims that may be used to effect a setoff. However, in order to utilize setoff to nullify the indebtedness held by the plaintiff, the defendant must also establish that the requirements of section 553 have been met which include a requirement that the defendant establish that it is entitled to prevail on its indemnity claim.

    2. Has defendant established the requirements
       under section 553?

This issue requires a consideration of the four requirements imposed under section 553 for the exercise of setoff.

a.  Does defendant hold a claim that arose
before commencement of the debtor's case?

This requirement actually consists of two elements.  First, the creditor must have a "claim" and, second, the claim must have arisen before the commencement of the debtor's bankruptcy case.  As explained below, the court finds that both of these elements are established in the record before the court.

The definition contained in section 101(5) is applicable in determining whether a creditor has a "claim."  A "claim" is defined in section 101(5) as any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. . . ."  The existence of a claim under this definition does not depend upon the ultimate validity and allowability of the claim.  Under this extremely broad definition, the defendant has a "claim" against the debtor in that the defendant asserts a breach of contract by the debtor and resulting monetary damages.

Whether the defendant's claim arose before the commencement of the debtor's bankruptcy case is disputed by the plaintiff.  The plaintiff argues that since the defendant paid the settlement to the broker and incurred the attorney fees included in its claim after the commencement of the debtor's case, the claim should be considered a post-commencement claim rather than pre-commencement. This argument is not accepted.  In the Fourth Circuit, the

- 8 -

applicable test for determining whether a claim arose before the commencement of a bankruptcy case is when the conduct occurred that created or gave rise to the claim. Grady v. A.H. Robins Co. (In re A.H. Robins Co.), 839 F.2d 198 (4th Cir. 1988); In re Camellia Food Stores, Inc., 287 B.R. 52, 57 n.2 (Bankr. E.D. Va. 2002). Accordingly, if the conduct or transaction giving rise to the claim occurred before the petition was filed, then the claim arose before the commencement of the case even though the claim may be contingent or unliquidated when the petition is filed. See Braniff Airways, Inc. v. Exxon Co., U.S.A., 814 F.2d 1030, 1036 (5th Cir. 1987)("The character of a claim is not transformed from pre-petition to postpetition simply because it is contingent, unliquidated, or unmatured when the debtor's petition is filed."); Employees' Retirement Sys. v. Osborne (In re THC), 686 F.2d 799 (9th Cir. 1982); L.R. Rothschild & Co. v. Angier, 84 B.R. 274 (D. Mass. 1988); In re Thompson, 182 B.R. 140, 152-53 (Bankr. E.D. Va. 1995); Simpson v. Phalen (In re Phalen), 145 B.R. 551 (Bankr. N.D. Ohio 1992).

In the present case, the contract in which the defendant agreed to pay the broker and which contained the agreement to indemnify the defendant was entered into prior to the commencement of debtor's bankruptcy case. The alleged breach of the contract giving rise to defendant's claim occurred when the debtor failed to pay the broker, which also occurred before the commencement of the

bankruptcy case, as did the lawsuit in which the defendant was sued by the broker. Under these circumstances, the defendant had a claim for breach of contract and for indemnification when the debtor's case was commenced even though the claim was contingent and unliquidated at that time. These circumstances are determinative of whether defendant's claim arose pre-commencement, rather than when the attorney fees and payment to the broker were actually incurred and the claim thereby rendered non-contingent and liquidated. See Abercrombie v. Hayden Corp. (In re Abercrombie), 139 F.3d 755 (9th Cir. 1998).

   b.   Does defendant owe a debt that arose before
        commencement of the debtor's case?

   This requirement also has two elements which consist of the creditor owing a debt and such debt having arisen before the commencement of the debtor's case. Both of these elements have been established. It is admitted by the defendant that both of the promissory notes referred to in plaintiff's complaint were executed by the defendant when the debtor's assets were transferred to the defendant. It likewise is admitted by the defendant that nothing has been paid on either promissory note. Clearly, the plaintiff has a claim based upon the promissory notes, which gives rise to a debt on the part of the defendant. 5 Collier on Bankruptcy ¶ 553.03[2][a] (15th ed. rev. 2008)("As a general rule, an obligation that would constitute a proper prepetition claim under section 553 if asserted by a creditor will likewise constitute a

- 10 -

proper prepetition debt if asserted by the debtor."). It likewise
is clear that such debt arose before the commencement of the
debtor's case when the promissory notes were executed and delivered
by the defendant.

c. Are the claim and debt mutual?

As a general rule, mutuality under section 553 requires that
the debts be owed between the same parties acting in the same
capacity. In re Koch, 224 B.R. 572, 576 (Bankr. E.D. Va. 1998).
"This simply means that the creditor is indebted to the debtor who
is similarly indebted to the creditor." Id. Many of the cases
also include as a general rule that the claim and debt must be owed
in the same "right." See 5 Collier on Bankruptcy ¶ 553.03[3][d]
(15th ed. rev. 2008). This requirement "simply enforces the rule
that joint obligations are not subject to setoff against separate
debts in bankruptcy." Id. Where, as in the present case, only two
parties are involved with respect to both the claim and the debt
and each of parties is acting severally and in its own right and
not as a fiduciary or other representative capacity, the mutuality
requirement of section 553 is easily met.

d. Are the claim and debt valid and enforceable?

This requirement means that a claim or debt may be utilized to
effect a setoff pursuant to section 553 only to the extent that it
is valid and enforceable under applicable nonbankruptcy law and
allowable under the Bankruptcy Code. 5 Collier on Bankruptcy

¶ 553.03[4] (15th ed. rev. 2008). This means that if the claim or debt is disputed, an examination of the merits of the claim or debt is required. See Conono Inc. v. Styler (In re Peterson Distrib., Inc.), 82 F.3d 956, 963-64 (10th Cir. 1996)(creditor was permitted to setoff only the amount of the invoices that had been submitted to and accepted by creditor according to its contract with debtor because only accepted invoices represented valid and enforceable debts owed by the creditor to the debtor); Rowan v. Morgan (In re Rowan), 15 B.R. 834, 840 (Bankr. N.D. Ohio 1981)(Social Security Administration could not setoff amount of overpayments received by the debtor against future payments to debtor because, when the bankruptcy case was commenced the Administration did not owe the debtor anything), aff'd, 747 F.2d 1052 (6th Cir. 1984). In the present case, defendant's claim is disputed by the plaintiff which means that the merits of the claim must be examined in order to determine whether defendant is entitled to utilize the claim in order to effect a setoff of the debt held by the plaintiff.

The theory of defendant's claim is that the debtor was obligated to pay a business broker and failed to do so. According to the defendant, defendant then became liable for the unpaid commission pursuant to the North Carolina bulk transfer statutes, paid the commission owed to the broker and is entitled to indemnification from the debtor with respect to the amount that the defendant paid the broker plus the attorney fees incurred as a

result of debtor's failure to pay the broker.

The evidence established the existence of an indemnity agreement. The purchase agreement signed by the parties contains a provision in which the debtor acknowledged that it was obligated to VR Business Brokers and agreed to indemnify the defendant from any liability for any broker's commissions relating to the transaction. The agreement also provides that the debtor agrees to indemnify and hold the defendant harmless from and against any and all claims and costs and expenses, including attorney fees, imposed upon or incurred by or asserted against the defendant by reason of a breach of any representation, warranty or covenant of debtor contained in the agreement.

North Carolina recognizes and will enforce contracts of indemnity under which the indemnitor agrees to indemnify the indemnitee with respect to liability that may be incurred by the indemnitee to a third party. E.g., New Amsterdam Cas. Co. v. Waller, 64 S.E.2d 826 (N.C. 1951). Such agreements typically are invoked when the third party later sues the indemnitee and the indemnitee is adjudged to be liable to the third party after a trial or other court proceeding. The record reflects, however, that this is not what happened in the present case.

Although it is undisputed that the broker sued the defendant, no judgment was ever entered against the defendant. Both the defendant and the debtor were named as defendants in the broker's

lawsuit.  The broker alleged that the debtor was liable based upon a contract to pay a commission or, alternatively, based on quantum meruit and that the defendant was liable for the commission based upon a failure to comply with the bulk transfer statutes and on the theory that the transfer of assets to the defendant constituted a fraudulent conveyance.  The record reflects that answers were filed denying liability and that debtor's answer asserted that the brokerage agreement had expired before the defendant agreed to purchase debtor's assets and that no commission was owed to the broker.  The broker's lawsuit was pending and unresolved when the debtor filed for chapter 7 bankruptcy relief on July 6, 2007, and it is undisputed that no judgment was ever entered against either the debtor or the defendant.  Instead, the defendant entered into a settlement with the broker in which the defendant paid the sum of $50,000 to the broker.  This does not necessarily mean, however, that defendant is precluded from recovery.

An indemnitee is not required to expose itself to the risk and expense of a trial in order to preserve its rights under an indemnity agreement.  See Bridgestone/Firestone, Inc. v. Ogden Plant Maint. Co. Of N.C., 548 S.E.2d 807, 812 (N.C. App. 2001). Indemnity may be available if the indemnitee is able to show that the settlement was reasonable and the indemnitee was not a mere volunteer.  Id.  Ordinarily, to establish a right to indemnification where a case is resolved by settlement, the

indemnitee must establish that the settlement was reasonable, that the underlying claim was valid against it, that the claim is within the coverage of the indemnity agreement, and that any counsel fees sought by the indemnitee are reasonable. 41 Am Jur Indemnity § 27 (2005). The quantum of proof required regarding the liability of the indemnitor to the third party varies according to whether prior notice of the settlement was provided to the indemnitor. Id.

Whether the defendant was liable or potentially liable to the broker involves a two-step inquiry. The first inquiry involves an analysis of the North Carolina bulk transfer statutes and a consideration of whether such statutes were applicable to the transaction in which the defendant acquired debtor's assets such that creditors of the debtor had a valid claim against the defendant or against the assets acquired by the defendant. The second inquiry is whether the broker had an enforceable claim against the debtor such that the broker was a creditor entitled to assert a claim under the applicable bulk transfer statutes. The record is insufficient to support a finding in favor of the defendant with regard to either inquiry. Nor is the record sufficient to show that the defendant was liable or potentially liable to the broker on the broker's alternative theory that the debtor's transfer of assets to the defendant constituted a fraudulent transfer. Nor does defendant's evidence adequately address the reasonableness of the payment that was made to the

broker or the reasonableness of the attorney fees included in defendant's claim. The result is that the defendant has not shown that its claim is valid and enforceable as required in order to obtain setoff under North Carolina law and section 553 and, therefore, is not entitled to summary judgment as to plaintiff's claim under the two promissory notes executed by the defendant.[1]

In accordance with the foregoing findings and conclusions, a separate order shall be entered pursuant to Bankruptcy Rule 9021 granting the defendant's motion for summary judgment as to the portion of plaintiff's claim based upon an alleged working capital loan and denying the motion for summary judgment as to the portion of the claim based upon the promissory note for $30,000 and the promissory note for $50,000.

This 10th day of June, 2008.

WILLIAM L. STOCKS
United States Bankruptcy Judge

---

[1]The doctrine of recoupment has not been raised or discussed by the parties and therefore is not addressed by the court.

- 16 -

PARTIES IN INTEREST

John M. Blust, Esq.
P.O. Box 3324
Greensboro, NC 27402-3324

Amiel J. Rossabi, Esq.
Emily J. Meister, Esq.
P.O. Box 41027
Greensboro, NC 27404-1027